RECEIVED

DEC 1 7 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JOHN BOURGEOIS

VERSUS

UNITED STATES COAST GUARD,
MARINE SAFETY UNIT, ET AL.

CIVIL ACTION NO.: 13-2921

JUDGE DOHERTY

MAGISTRATE JUDGE WHITEHURST

### MEMORANDUM RULING

Pending before the Court is a "Motion to Dismiss, and in the Alternative, Motion for Summary Judgement" [Doc. 24] filed on behalf of defendants, the United States Coast Guard, Marine Safety Unit ("USCG") and Jeh Charles Johnson, the Secretary of Homeland Security ('collectively, "defendants"), wherein defendants seeks dismissal with prejudice of all claims brought against them by the plaintiff. The plaintiff opposes the motion [Doc. 32], and the defendants filed a Motion for Leave to File a Reply Brief [Doc. 38], which is herein GRANTED. For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART.

I. **Factual and Procedural History**

Plaintiff, John Bourgeois, filed the instant lawsuit on October 23, 2013 against the USCG and Secretary Johnson asserting claims for: (1) unlawful discrimination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) unlawful discrimination on the basis of national origin in violation of 42 U.S.C. §1981;[1]

---

[1] 42 U.S.C. §1981 grants all persons within the jurisdiction of the United States equal rights to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Neither party has addressed claims brought pursuant to §1981. However, the Court notes employment discrimination claims brought under 42 U.S.C. §1981 are analyzed under the evidentiary framework applicable to claims arising under Title VII. *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). As such, plaintiff's claims brought pursuant to §1981 will be addressed in conjunction with her Title VII claims.

and, the (3) unlawful retaliation in violation of 42 U.S.C. §2000e-3(a).[2]

Specifically, plaintiff alleges he is a member of the protected class of "native born American of Acadian descent" – or "Cajun American" – who began his employment as a vessel traffic control specialist for the Marine Safety Unit of the Coast Guard in 2007.  Plaintiff further alleges that despite an exemplary record as an employee who continually exceeded expectations in all categories of his job requirements, he was subjected to "discriminatory terms and conditions of employment and harassment based on his national original, Acadian."  Specifically, the plaintiff alleges the following:

9.

From July 2011 through June 2012, Bourgeois was subjected to a continual pattern of harassment and retaliation by Michalczak in the form of multiple discriminatory and derogatory statements and acts, that include but are not limited to the following:

A.   In July of 2011, the very first time Michalczack introduced himself to the crew, he shook all the employees' hands, except Bourgeois.'  He immediately let Bourgeois know he was not a part of the team.

B.   In September of 2011, Michalczak issued Bourgeois a letter of admonishment pertaining to an incident that took place while Bourgeois was working his second job as a private tug boat captain and not on the clock for the Coast Guard. Even though Bourgeois had nothing to do with the incident, he was denied a $1,500 bonus.

C.   In February of 2012, Michalczak stated to Bourgeois and others that "coon ass" boat captains were so dumb that he could not understand how they were able to pass the test to receive their licenses.

D.   In April of 2012, because of Bourgeois accent, Michalczak told Bourgeois he "sounded unprofessional" after a conversation Bourgeois had with a group of mariners on the radio.

E.   In May of 2012, Michalczak again made the statement that "coon ass" boat captains were dumb and unable to perform their jobs adequately.

---

[2] It is unclear to this Court whether the plaintiff is also alleging a claim for hostile work environment. Although there is language in the plaintiff's briefing suggesting such a claim, the claim is not clearly pled in the plaintiff's complaint, and therefore, this ruling does not address such a claim.

F.   Bourgeois was the lowest paid civilian employed with the Morgan City unit.

G.   For 2012, Michalczak did not recommend Bourgeois for a step increase in his salary even though Bourgeois received an "excellent" on his employment evaluation. Notably, all other employees in the unit received a step increase in their salary.

H.   Michalczak denied Bourgeois another bonus that Bourgeois earned for 2012.[3]

Defendants filed the instant motion as a motion to dismiss on grounds of lack of subject matter jurisdiction, and alternatively, as a motion for summary judgment. The plaintiff opposes the motion.

## II.   Law and Analysis

The instant motion is presented as a motion to dismiss for lack of subject matter jurisdiction and, alternatively, as a motion for summary judgment. When faced with multiple grounds for dismissal in a motion, a federal district court should consider subject matter jurisdiction before any determination on the merits. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (noting, however, that the same principle does not dictate a sequencing of jurisdictional issues). Consequently, this Court will address the grounds for dismissal under the motion to dismiss for lack of subject matter jurisdiction before addressing the motion for summary judgment.

### A.   Rule 12(b)(1) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Lewis v. Brown*, 2015 WL 803124, *1 (M.D. La. Feb.25, 2015) (J. DeGravelles); *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. Sept. 30, 2013) (J. Jackson), citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992). However, while the 12(b)(6) analysis

---

[3] *See* plaintiff's Complaint, Doc. 1, at pp.2-3.

is generally confined to a review of the complaint and its proper attachments, *Fin. Acquisition Partners v. Blackwell*, 440 F.3d 278, 286 (5th Cir.2006), under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; and/or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997). *See also Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289, 293 (5th Cir.2008). Finally, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Hall*, 974 F.Supp.2d at 986.

When reviewing a motion to dismiss under Rule 12(b)(6), the Court's "analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) *cert. denied*, 133 S.Ct. 32, 183 L.Ed. 2d 678 (U.S. 2012) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). The Court reviews the motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff*." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted)(emphasis added). However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(emphasis added). "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)(emphasis added). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to

-4-

whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) (emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to *"nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)(emphasis added). Again, the jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In the instant case, the defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction on grounds the plaintiff has failed to exhaust his administrative remedies prior to filing the original complaint. Specifically, the defendants argue "there is no record of [p]laintiff filing or submitting a formal EEO complaint,"[4] a jurisdictional defect the defendants argue mandates a dismissal of the instant matter for lack of jurisdiction.

Before bringing suit in federal court, "Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies. The complainant also must file his complaint in a timely manner. If the claimant fails to comply with either of these requirements then

---

[4] *See* defendant's Motion for Summary Judgment, Doc. 24, at p. 21.

the court is deprived of jurisdiction over the case." *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir.1998) (internal citations omitted).  In order to exhaust administrative remedies, a plaintiff must comply with the EEO regulations set forth at 29 C.F.R. §1614.105.  A federal employee claiming discrimination must first contact an EEO counselor within 45 days of the allegedly discriminatory incident.  29 C.F.R. § 1614.105(a)(1).  If the claim is not resolved at the first stage, the EEO counselor has 30 days in which to notify the employee of his right to file a formal discrimination complaint with the employing agency.  29 C.F.R. § 1614.105(d).  The employee then has fifteen days from receiving this notice to file a formal complaint of discrimination.  29 C.F.R. § 1614.105(d).

Review of the record shows the plaintiff initiated two EEO contacts: (1) one on June 1, 2012, asserting four claims of discrimination (case number HS-USCG-22545-2012); and (2) one on May 15, 2013, in which the plaintiff asserted a claim of retaliation (case number HS-USCG-03122-2013). With respect to the first contact, plaintiff requested and was granted alternative dispute resolution[5] on June 6, 2012.  On the same date, the plaintiff received a Notice of Rights and Responsibilities with regard to the EEO process.  On July 6, 2012, the plaintiff received a Notice of Right to File Discrimination Complaint, which informed the plaintiff that he had the right to file a formal complaint of discrimination within 15 days of receipt of the Notice.  However, instead of filing a formal complaint of discrimination, the plaintiff filed an appeal to the EEOC, Office of Federal Operations ("OFO"), on July 24, 2012.  The plaintiff later filed a memorandum in support of his appeal to the OFO on August 23, 2012.

---

[5] The record indicates ADR was conduced on June 28, 2012 and was "unsuccessful."  *See* EEO/EO Counselor's Report, attached as Exhibit K to defendant's motion for summary judgment, at p. 5.

A decision on that appeal was issued on June 24, 2015.  In that decision, the EEOC stated:

On July 6, 2012, Complainant acknowledged that he received Notice of Right to File Discrimination Complaint from an Agency Equal Employment (EEO) Counselor. 29 C.F.R. §1614.105.   Rather than filing his complaint with the Agency, Complainant, through counsel, sent his complaint form as well as his copy of the Agency's internal administrative investigation of his claim of harassment to this Commission on July 24, 2012.  We docketed this submission as an appeal.

Upon review, we conclude that the Agency gave Complainant appropriate notice of how to file an EEO complaint and Complainant was represented by an attorney. Accordingly, we decline to excuse Complainant's failure to comply with the Commission's regulations set forth at 29 C.F.R. Part. §1614.   This appeal is DENIED.

The Decision also states:

**You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date you receive this decision.** . . .[6]

The defendants argue that because the plaintiff did not file a formal EEO complaint with respect to HS-USCG-22545-2012, there is no EEO report of investigation and no final agency decision with respect to case number HS-USCG-22545-2012.

The question presented by the facts herein – whether the plaintiff has exhausted administrative remedies when he did not follow the EEO's procedure, however has technically been granted the right to file a lawsuit in federal court – was not an easy one to answer and not one this Court found answered in any cases researched.  However, after review of the record, this Court concludes the plaintiff has exhausted administrative remedies in this matter.  First, this Court finds the plaintiff's claim of retaliation has been exhausted, as the plaintiff obtained a final agency decision on that claim.[7]  With respect to the plaintiff's claims of discrimination, it appears that

_____

[6] *See* "Appeals Decision," attached as Exhibit H2 to plaintiff's opposition brief, Doc. 30. (emphasis added)

[7] Plaintiff's claim of retaliation – embodied in case number HS-USCG-03122-2013 – did make it to a final decision.  On January 9, 2014, the plaintiff filed a request for a final agency decision, which was issued on March 4,

although the plaintiff did not comply with the Commission's regulations set forth in 29 C.F.R. Part.

§1614, the plaintiff was nonetheless instructed in the Appeals Decision by the Commission that the

plaintiff had "the right to file a civil action in an appropriate United States District Court within

ninety (90) calendar days from the date you receive this decision. . . ." Perhaps the inclusion of this

language in the Appeals Decision was mere boilerplate language included in all Appeals Decisions,

however, the language and instruction was issued, which specifically instructed the plaintiff to file

his claim in district court within a specific time period. The plaintiff followed these instructions, and

therefore, this Court concludes, technically, the plaintiff has exhausted administrative remedies, and,

therefore, this Court does not lack jurisdiction over the plaintiff's claims on this basis.

Consequently, the motion to dismiss under Rule 12(b)(1) is DENIED.

**B.    Motion for Summary Judgment**

Summary judgment is appropriate where the facts and law as represented in the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show there is no genuine issue as to any material fact and the moving party is entitled to a judgment

as a matter of law. Fed. R. Civ. Proc. 56(c). A fact is material if it could affect the outcome of the

case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute

about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* at 248.

The party seeking summary judgment bears the initial burden of demonstrating that there is

an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 47 U.S.

317, 325 (1986). Only after a proper motion for summary judgment is made must the non-movant

---

2014, concluding the plaintiff failed to prove retaliation.

set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5ᵗʰ Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5ᵗʰ Cir. 2001).  "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id.  In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Id*.  To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5ᵗʰ Cir. 2001).

### C.    Claims of Discrimination in violation of Title VII and 42 U.S.C. §1981

The plaintiff alleges claims for discrimination under both Title VII and §1981, however the analysis under both statutes is identical, the only substantive difference between the two statutes being their respective statutes of limitations and the requirement under Title VII that the employee exhaust administrative remedies. *See Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468

(5th Cir. 2002); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir.2001); *see also Cervantes v. IMCO, Halliburton Servs.*, 724 F.2d 511, 513 n. 4 (5th Cir.1984).  Because neither of these differences are pertinent here, this Court will not separately analyze the merits of the claim under each statute.

Title VII of the Civil Rights Act of 1964[8] forbids employment discrimination against any individual based on the individual's race, color, religion, sex, or national origin.  *Burlington Northern & Santa Fe Railway Co., v White*, 126 S.Ct. 2405, 2408 (2006) (internal quotations omitted).  The plaintiff alleges discrimination based on national origin, arguing he is a member of a protected group – Acadian, or "Cajun" – because his ancestors were from Acadia and/or Nova Scotia and migrated to South Louisiana, entitling him to protection under 42 U.S.C. §2000e-2(a), which states:

(a) Employer practices

It shall be an unlawful employment practice for an employer–

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Under established law, an employee can prove discrimination through direct or circumstantial evidence.  *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.1994).   If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or

---

[8] Title VII is codified at 42 U.S.C. §2000e, *et seq.*

was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus. *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Id.*  Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

In the instant case, the plaintiff argues there is direct evidence of discrimination, in the form of Lt. Michalczack's use of the term "coonass" to describe the plaintiff.  In order for a discriminatory comment or remark to constitute direct evidence of employment discrimination, the Fifth Circuit has held the comment must meet the four-factor test set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996).  *See also Laxton v. Gap, Inc.*, 333 F.3d 572, 583 n.4 (5th Cir.2003); *Augister v. Vermilion Parish School Bd.*, 249 F.3d 400, 405-406 (5th Cir. 2001); *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir.1999).  Under the *CSC Logic* test, a workplace remark constitutes direct evidence of discrimination if it is: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the employment decision at issue; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Augister*, 249 F.3d at 405, *quoting CSC Logic*, 82 F.3d at 655.  Thus, the first question before this Court is the interesting question of whether the plaintiff is a member of a protected class.  The plaintiff argues he was discriminated against based on his "natural origin, Acadian/Cajun."  Defendants argue even though the plaintiff has the surname

"Bourgeois," the plaintiff has put forth nothing other than self-serving statements and no additional evidence to support his allegation that he is of Acadian descent, as opposed to one who merely "considers himself to be Cajun." However, defendants key to the *factual* basis to support plaintiff's allegations that he is of Acadian or "Cajun" descent. There is, however, the *legal* question of whether Acadian or Cajun lineage can, in and of itself if proven, constitute an identifiable or protected group of national origin due protection under the Act.

In *Espinoza v. Farah Manuf. Co.*, 414 U.S. 86, 88 (1973), the United States Supreme Court construed the term "national origin" to include "the country where a person was born, or more broadly, the country from which his or her ancestors came." Following *Espinoza*, in *Roach v. Dresser Industrial Valve & Instrument Div.*, 494 F. Supp. 215 (W.D. La. 1980), the district court in that case extended national origin protection to people of Cajun descent. *See also Daigle v. Liberty Life Ins. Co.*, 1995 WL 110593 (E.D. La. 1995) ("[a]s a person of Cajun descent, [the plaintiff] qualified as minority under the statute proscribing discrimination based on national origin."). Additionally, and, also, not determinative of the issue but, also, informative, are the EEOC's current regulations, which define national origin discrimination to include "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or *because an individual has the physical, cultural or linguistic characteristics of a national origin group.*" 29 C.F.R. 1606.1 (emphasis added).

This Court was unable to find any Fifth Circuit or appellate court cases conducting an analysis of the *legal issue* of national origin as it pertains to "Cajuns" or others of the Acadian heritage. However, it is clear to this Court that the statute purports to protect those of specific national heritage and in so doing, one of the defining features discussed in the jurisprudence is the physical, cultural, or linguistic characteristics of the national origin group. Those of the Acadian

-12-

culture have a distinctive linguistic pattern and accent, as well as a distinct cultural uniqueness that

sets them apart, all which would argue for inclusion.

This Court finds the case of *EEOC v. Teleservices Marketing Corp.*, 405 F.Supp. 724, 729

(E.D. Tex. 2005) particularly of interest, as the district court discussed a person's accent and its

potential impact on national origin discrimination as follows:

> "[N]ational origin is deemed to be inextricably intertwined with an individual's accent." *Madiebo v. Div. of Medicaid/ State of Mississippi, et al.*, 2 F.Supp.2d 851, 855 (S.D.Miss.1997) (*citing Fragante v. City of Honolulu*, 888 F.2d 591, 596 (9th Cir.1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990)). As a result, discrimination against an individual based on the characteristics of his speech is a violation of Title VII of the Civil Rights Act of 1964, as amended. *Id.* Unlawful discrimination based on national origin does not occur if an individual's manner of speaking or accent affects his ability to effectively perform his job. *Id.* But "[b]ecause the evaluation of a person's communication skills is an inherently subjective determination, district courts are encouraged to give such claims a very searching look" so as to determine whether a claim that an individual lacked communication skills is not just an attempt to disguise national origin discrimination. *Id.* In this case the EEOC has presented sufficient evidence to create a question of fact as to whether it has established through direct evidence, that TMC unlawfully discriminated against Babiker. Certainly the fact that TMC had employed Babiker in an outbound calling campaign for Verizon and subsequently recruited him from another job to participate in the outbound calling campaign for ATX is at least some evidence that he was qualified for the position. Jah Harbour testified in his deposition that he and Cole made the decision to terminate Babiker and that Babiker's accent played a role in their decision to terminate Babiker. Jah Harbour further testified that he didn't recall whether he was actually the one who removed Babiker from the campaign. The testimony of Harbour in and of itself creates a fact issue as to whether EEOC can establish intentional discrimination through direct evidence. Accordingly, summary judgment is improper in this case.

Upon review of the language of the statute itself, the uniqueness of those of Acadian or

"Cajun" national origin, and the limited jurisprudence available on this issue, this Court concludes

that, as a matter of law, those people who can adequately identify themselves as Acadians or

"Cajuns" are sufficiently distinctive as to qualify for the protections of 42 U.S.C. §2000e-2(a) for

purposes of national origin protection under Title VII.  However, that conclusion does not end the

inquiry for purposes of the instant motion; defendants challenge plaintiff's ability to establish he is of that protected grouping; therefore this Court must determine whether the plaintiff has – from a *factual* standpoint – presented sufficient evidence to defeat the motion for summary judgment.

In the instant case, at his deposition, the plaintiff testified his father's and mother's ancestor's can be traced to Acadia or Nova Scotia, from which they migrated to South Louisiana. The foregoing is not disputed, nor is it disputed that the plaintiff's surname is one associated with the Acadian or "Cajun" culture, nor that plaintiff has the linguistic characteristics of one of "Cajun" or Acadian national origin. This Court concludes the non-disputed facts are sufficient to defeat defendants' motion for summary judgment on the issue of plaintiff's heritage; however, again, this does not end the inquiry.

Finally, this Court must determine whether the plaintiff has presented sufficient evidence to defeat the movants' motions for summary judgment on the issue of discrimination having occurred. The Court notes the parties approach the question from different analytical frameworks – the movants argue the plaintiff has presented only circumstantial evidence of discrimination – which would require an analysis under the burden-shifting scheme of *McDonnell Douglas*, while the plaintiff argues he has presented direct evidence of discrimination in the form of the use of the derogatory term "coonass." As this Court has previously pointed out, if an employee presents credible *direct* evidence that discriminatory animus *at least in part* motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus. *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Absent direct evidence of discriminatory intent, as is typically the case, proof via

-14-

circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

With respect to employer violations of the national origin aspect of 42 U.S.C. §2000e-2(a), this Court has only a district court case to review as to whether the term "coonass" is sufficiently derogatory to trigger direct evidence Title VII protection.  This Court notes that in the racial context, however, the Fifth Circuit has held that use of the term "nigger" has been found to be sufficiently egregious so as to constitute direct evidence of discrimination.  *See, e.g.*, *Young v. City of Houston, Tex.*, 906 F.2d 177, 180–81 (5th Cir.1990) (the Fifth Circuit stated it "has implied that calling an employee a 'nigger' would be direct evidence of race discrimination,"), *citing Kendall v. Block*, 821 F.2d 1142, 1145–46 (5th Cir.1987).  *See also Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 89 n.2. (5th Cir. 2004) (observing racial epithets undoubtably demonstrate racial animus).  It is undisputed that the term "coonass" is a derogatory term used to negatively describe those of Acadian or Cajun heritage much like the term "nigger" for those of African American descent.  Although the term "nigger" carries a much heavier weight of historical tragedy and prejudice, the term "coonass" is one burdened with its own negative historical and cultural baggage.  Consequently, this Court concludes the term "coonass" is a derogatory term for those of Acadian or Cajun descent, and use of that term within the contextual basis of a supervisor describing an employee in a workplace should be seen as direct evidence of discrimination.  Furthermore, within the Acadian or Cajun culture, use of the work "coonass" is, in and of itself, offensive, much as is the term "nigger" in the African American culture.  Thus, the Court finds defendants' argument on the basis that use of the term was unoffensive wholly unpersuasive.

Next, plaintiff argues Lt. Michalczack's use of the term "coonass" occurred in February and April 2012, which were proximate in time to the alleged denial of the plaintiff's step-increase and his performance bonus, as well as proximate to the time he alleges he was denied the opportunity to work his second job as a private tugboat captain. The plaintiff, also, alleges the "coonass" comments were made by Lt. Michalczack, one who had authority over the employment decisions at issue. The plaintiff further argues the foregoing evidence is clearly related to the employment decisions at issue and, also, constitutes direct evidence of discrimination.

Because the defendants argue the instant case is one involving circumstantial evidence, they have not addressed the framework to be used when direct evidence exists. Nevertheless, mindful that this matter is before this Court on summary judgment, the Court notes it is required to view the evidence presented in the light most favorable to the plaintiff, taking the record evidence and all reasonable inferences therefrom in his favor. This Court must assume the truth of the statements in the record. Additionally, this Court has determined, that much as with the term "nigger," use of the term "coonass" within the contextual basis argued, should be illustrative of direct evidence of discrimination. Upon extensive review of the parties' arguments and the record in this case, and mindful of the summary judgment standard, this Court concludes the plaintiff has demonstrated direct evidence of discrimination, and, therefore, it is unnecessary to engage in the *McDonnell Douglas* burden-shifting analysis employed for circumstantial evidence cases at this juncture.

This Court is not unaware that in their briefing, the defendants dispute that Lt. Michalczack used the term "coonass" at all, and whether the term, if used, was used in an offensive manner. However, the Court is, also, mindful of its obligation under a summary judgment analysis to accept the facts in the light most favorable to the plaintiff.

Considering the foregoing, the Court concludes the plaintiff has presented at least some direct evidence of discrimination based upon national origin, and, that, at the very least, the defendants' motion presents genuine issues of material fact that make summary judgment on the plaintiff's national origin discrimination claims inappropriate at this time.  Thus, the defendants' motion for summary judgment seeking dismissal of plaintiff's national origin discrimination claim is DENIED.

**D.    Retaliation**

To establish a *prima face* case of retaliation under Title VII, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of retaliation.  To establish a *prima facie* case of retaliation, plaintiff must show: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action."  *Drake v. Nicholson,* 324 Fed.Appx. 328, 331 (5th Cir.2009); *Holloway v. Department of Veterans Affairs,* 309 Fed.Appx. 816, 817-18 (5th Cir.2009); *LeMaire v. Louisiana,* 480 F.3d 383, 388 (5th Cir.2007); *Banks v. E. Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  "Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.  *Nigro v. St. Tammany Parish Hosp.*, 377 F.Supp.2d 595, 601 (E.D.La. 2005) (J. Lemmon), *citing Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).  "Adverse employment actions" include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.  *See, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.1997) (in anti-retaliation case, Fifth Circuit held neither a verbal threat of being fired, a reprimand for not being at an assigned work station, a missed pay increase, nor being placed on "final warning," constituted ultimate employment actions due to their lack of ultimate consequence); *Dollis v. Rubin,* 77 F.3d 777, at 779, 782 (in anti-retaliation

-17-

case, Fifth Circuit held an employer's refusal to allow plaintiff employee to attend training sessions did not effect a material adverse change in terms or conditions of his employment, and thus did not constitute an "ultimate employment decision").[9]  To determine causation, an employee must show that "but for" the protected activity, the adverse employment action would not have taken place.  *Id.*

If the employee sets out a *prima facie* case, the burden shifts to the employer to "state a legitimate non-retaliatory reason for its action." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005)*, citing Septimus v. Univ. of Houston,* 399 F.3d 601, 610 (5th Cir.2005).  After the employer states the reason, "any presumption of retaliation drops from the case," and the burden shifts back to the employee to show that the "stated reason is actually a pretext for retaliation."

---

[9] As the district court explained in *Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843, 848 (E.D. La. 2006) (J. Africk):

"[O]nly ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating satisfy the adverse employment action element of a prima facie case of retaliation." *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 191 (5th Cir.2001) (quoting *Dollis v. Rubin,* 77 F.3d 777, 781-82 (5th Cir.1995)) (internal quotations omitted). Title VII was not intended to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis,* 77 F.3d at 781-82. "Interlocutory ... decisions which can lead to an ultimate decision are insufficient to support a prima facie case of retaliation." *Fierros,* 274 F.3d at 191 (quoting *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.1997)) (internal quotations omitted). An adverse employment action must "have more than a tangential effect on a possible future ultimate employment decision." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 519 (5th Cir.2001) (internal quotation and citation omitted). This restriction on the interpretation of adverse employment actions is necessary because, as the *Mattern* court explained, "[t]o hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee-anything which might jeopardize employment in the future. Such expansion is unwarranted." 104 F.3d at 708.

This Court notes the Fifth Circuit has implied that the continuing vitality of the "ultimate employment decision" doctrine is questionable in the light of *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *See Fierros v. Tex. Dept. of Health,* 274 F.3d 187, 192 n. 2 (5th Cir.2001) (" *Burlington Industries* and *Faragher* are noteworthy in the context of this court's 'ultimate employment decision' doctrine because the Supreme Court sets out a relatively broad definition of 'tangible employment action': 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' ".). *Felton v. Polles,* 315 F.3d 470, 486-87 (5th Cir. 2002). However, in *Felton,* the Fifth Circuit noted the *Dollis* case is the one "clear pronouncement" on the issue. Thus, this Court is bound to follow Fifth Circuit precedent, and, therefore, will apply the "ultimate employment decision" doctrine in this case.

*Baker*, 430 F.3d at 755, *citing Pineda v. United Parcel Service, Inc.,* 360 F.3d 483, 487 (5th Cir. 2004).

In the instant case, it appears the plaintiff is arguing he was retaliated against in two ways: (1) after he filed his EEO complaint, he was forced to attend a "training class;" and (2) he was treated less favorably than non-Cajun employees in the form of lower compensation and not being awarded performance awards and/or bonuses.

### a.    Cultural diversity training

The plaintiff argues he was retaliated against by being forced to attend a "training class" after he filed his EEO complaint. The defendants argue all employees were required to attend "cultural diversity training," which was scheduled by the commander of the plaintiff's unit, not Lt. Michalczak. The defendants argue the plaintiff was not, in fact, required to attend the live training but was permitted to watch a video of the training during his scheduled work hours. Thus, the defendant argues the requirement that all employees participate in the watching of the video does not constitute an "adverse employment action," and there is no causal link between the filing of the plaintiff's EEO complaint and the video.

This Court agrees. Additionally, this Court notes the well-established rule that Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. Not only was the plaintiff not singled out to watch the video, but it appears the video was the plaintiff's employer's attempt to rectify potential harassment that was occurring in the workplace environment. Based on the foregoing, this Court concludes the plaintiff has not satisfied his burden of showing that the watching of the cultural diversity video was an "adverse employment action" properly supports his retaliation claim. Ergo, the Court concludes the defendants are entitled to summary

judgment on this aspect of plaintiff's retaliation claim.

### b.        Lower compensation and performance awards/bonuses

The plaintiff alleges he also was the lowest paid civilian employed with the Morgan City unit; that in 2012, Lt. Michalczak did not recommend him for a step increase in his salary even though he received an "excellent" on his employment evaluation, while all other employees in the unit received a step increase in their salary; and that Lt. Michalczak denied the plaintiff another bonus allegedly earned in 2012.[10] The defendants argue that contrary to the plaintiff's allegations, there are three other Vessel Traffic Management Specialists in the plaintiff's unit, and plaintiff's salary was equal to another civilian employee in the same position and "only $1,913.00 annually less than the other." Defendants further argue plaintiff's base salary was higher than four other civilian employees in his unit without consideration of the overtime pay available to the plaintiff. The defendants, also, argue plaintiff was nominated for a performance award in 2012, but that no civilian in the Morgan City unit received a performance award for the performance year 2012/2013, as the Civilian Monetary Award Program was eliminated that year due to sequestration. Thus, the defendants argue the plaintiff's failure to receive a performance award during the relevant time period was not causally linked to the filing of the plaintiff's EEO complaint but rather was due to an established policy reason.

Under the framework for analyzing a retaliation claim under Title VII, once an employer states a legitimate, non-retaliatory reason for its action, "any presumption of retaliation drops from the case," and the burden shifts back to the employee to show that the "stated reason is actually a pretext for retaliation." *Baker*, 430 F.3d at 755, *citing Pineda v. United Parcel Service, Inc.,* 360 F.3d 483, 487 (5th Cir. 2004). In the instant case, the plaintiff has not argued *per se* that the

---

[10] *See* plaintiff's Complaint, Doc. 1, at pp.2-3.

aforementioned incidents are evidence of retaliation.  Rather, in his opposition brief, the plaintiff focuses solely on the cultural diversity training as the evidence supporting his claim of retaliation.

Considering the foregoing, this Court concludes to the extent the plaintiff's claim of retaliation is based on the foregoing employment incidents, the defendants have offered legitimate, non-discriminatory reasons for the employment actions taken, and the defendants are entitled to summary judgment on the plaintiff's claims that the foregoing incidents constitute retaliation under Title VII.  Consequently, the Court concludes the defendants are entitled to summary judgment on these aspects of plaintiff's retaliation claim as well.

## III. CONCLUSION

For the foregoing reasons, the "Motion to Dismiss, and in the Alternative, Motion for Summary Judgement" [Doc. 24] filed by defendants, the United States Coast Guard, Marine Safety Unit ("USCG") and Jeh Charles Johnson, the Secretary of Homeland Security is GRANTED IN PART AND DENIED IN PART.

IT IS ORDERED that defendants' Motion to Dismiss under Rule 12(b)(1) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The defendants' motion for summary judgment seeking dismissal of plaintiff's national origin discrimination claim is DENIED.  The defendants' motion for summary judgment seeking dismissal of plaintiff's retaliation claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

Lafayette, Louisiana, this _____16_____ day of December, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-21-